UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| NIGEL M. REID II, | ) | |
| | ) | |
| Plaintiff, | ) | 2:18-CV-00090-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| AUBREY'S RESTAURANT INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant has filed a Motion to Dismiss or in the Alternative a Motion for Summary Judgment [Doc. 37] and supporting memorandum [Doc. 38]. Plaintiff responded in opposition[1] [Doc. 40]. Defendant replied [Doc. 42]. This matter is now ripe for resolution.

**I.    Factual and Procedural Background**

Plaintiff is proceeding *pro se.* Plaintiff worked for Defendant Aubrey's Restaurant as a dishwasher beginning on or about December 1, 2017 [Doc. 1, pg. 9]. On January 3, 2018, he made a complaint of sexual harassment to his district manager. He states that another employee "came behind [him] and made contact on me and follow[ed him] for 30 sec[onds] to a minute long on security footage." [Doc. 1, pg. 5]. He alleges that Jason Ward, the employee, had "harassed the other employees that night." [*Id.* at 5]. He alleges that Ward was "drunk" at the time and was not even working when Ward touched Plaintiff's shoulders.

---

[1]    In response to Defendant's motion, Plaintiff filed a document [Doc. 40] titled "Response in support to Motion for Leave to Amend (Doc 1) against (Doc 37) and (Doc 38)." The Court will consider this as Plaintiff's response.

1

Ten days later, on January 13, 2018, Plaintiff left work early and went to the emergency room for treatment. He sent a text to his supervisor at 5:00 p.m. that day advising him that he had to leave work early to go to the ER because "I think I pulled a muscle?" The next day, on January 14, 2018, Plaintiff was scheduled to work, but was a no show, and he did not call in advance to advise of his anticipated absence. When Plaintiff did show up for work on January 15, 2018, Defendant terminated his employment for not showing up for work the day before and not calling in.

On April 13, 2018, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discharged him because he had complained of sexual harassment regarding the incident with Ward [Doc. 1-8, pg. 7].[2] On April 23, 2018, the EEOC closed its file on this charge, stating that it was "unable to conclude that the information obtained establishes violations of the statutes." [*Id*. at pg. 6]. Specifically, the EEOC found that Plaintiff did not establish a violation on a discharge issue nor did he establish a violation on the basis of retaliation [*Id*. at pg. 7].

On June 7, 2018, Plaintiff sued Defendant Aubrey's Restaurant and Jason Ward [Doc. 1]. He alleged Defendant violated 42 U.S.C. § 1983 for terminating his employment. He also alleged Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., by discriminating against him on the basis of his race and sex and illegally retaliated against him for making a complaint about being sexually harassed. He also alleged Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The facts of the case are not in dispute. In his complaint, Plaintiff alleged that "[o]n January 3, 2018, I made a complaint

---

[2] Plaintiff only attached the EEOC Right to Sue notice and letter explaining the decision. He did not attach his EEOC charge.

of sexual harassment to my district manager. On January 15, 2018, I was discharged. The reason given for my discharge was for a no-call, no show." [Doc. 1, pg. 2]. He sued for $20 million dollars.

On August 1, 2018, this Court granted Defendant Ward's motion to dismiss, finding that Plaintiff had failed to state a cause of action against Ward, individually [Doc. 16]. On September 18, 2019, Defendant filed a Motion for Summary Judgment [Doc. 37] and supporting memorandum [Doc. 38], arguing there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. Plaintiff responded [Doc. 40].

## II.  Standard of Review

Under Fed.R.Civ.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ultimately, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The burden of proving that no genuine dispute of fact exists is strictly upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). As such, the court must consider the evidence and "draw all reasonable inferences in favor of the nonmoving party." *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253, F.3d 900, 907 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

However, once the moving party has presented sufficient evidence to support summary judgment, the nonmoving party "must point to evidence in the record upon which a reasonable finder of fact could find in its favor." *Machoka v. City of Collegedale*, No. 1:17-CR-203-TAV-CHS, 2019 WL 1768861, at *3 (E.D. Tenn. Apr. 22, 2019) (citing *Anderson v. Liberty Lobby, Inc.*,

3

477 U.S. 242, 248 (1986)). The nonmoving party "may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id*. at 251-252.

**III.    Analysis**

As Plaintiff brings his claims under multiple statutes, the Court will address each claim and the requirements of the statute in turn.

**A.    Plaintiff's claims under 42 U.S.C. § 1983**

"Section 1983 requires state action in order for a claim to be cognizable. Specifically, a § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Simpson-Gardner v. City of Southfield*, 2017 WL 1021067, *1 (S.D. Mich. March 16, 2017) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

"Section 1983 does not, as a general rule, prohibit the conduct of private parties acting in their individual capacities." *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007). However, a private party may be liable under § 1983 if their conduct is "fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 231–32 (6th Cir. 1996) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). "There are three tests employed by the courts to determine whether the challenged conduct is fairly attributable to the state: (1) the public function test, (2) the state compulsion test and (3) the symbiotic relationship or nexus test." *Id*. at 232 (citing *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992))

4

In this case, Aubrey's Restaurant is what its name suggests, a restaurant. It is a private party, not a state actor. Plaintiff has not alleged any facts that would suggest that Defendant's conduct is in any way fairly attributable to the state. Therefore, Plaintiff cannot succeed on his claim under § 1983 and that claim is DISMISSED.

**B.     Plaintiff's Title VII Claims**

    1.     **Race and Sex Discrimination Claims**

Title VII states that "[i]t shall be an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). A claim under Title VII must be supported by direct evidence of unlawful conduct or by circumstantial evidence that raises an inference of unlawful conduct. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Direct evidence, if believed, requires no inferences to conclude that unlawful conduct was a motivating factor in the challenged action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). If the plaintiff relies upon circumstantial evidence, the Court utilizes the burden shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff is first required to establish a prima facie case of unlawful conduct and, if that is done, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged conduct. S*ee St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant articulates such a reason, the presumption drops from the case, and the plaintiff must then show that the reason offered by the defendant is a pretext for unlawful conduct. *Id*. at 508. Whatever method of proof is used, the

5

ultimate burden is on the plaintiff to show that he or she suffered unlawful conduct under Title VII. *Id*. at 518.

Plaintiff has alleged that he believes Defendant discriminated against him on the basis of his sex and his race when it terminated his employment on January 15, 2018. Defendant did not discriminate against him on either basis. In his recitation of the facts of this case, Plaintiff makes no indication of how his race or his sex had any effect on his termination. Plaintiff states that he "was the only man touched that was black there under color of … law," [Doc. 4, pg. 3], but fails to allege any facts for the Court to reasonably infer that Defendant discriminated against him "*because of* [his] race, color, religion, sex, or national origin...." 42 U.S.C. 2000e-2(a)(1) (emphasis added). An off-duty co-worker touched his shoulder on one occasion, which offended Plaintiff, but he does not even attempt to establish a causal connection between his race or sex and his termination. He only makes the conclusory allegation of discrimination. That is insufficient. *See Tucker v. Victor Gelb, Inc.*, No. 98-4070, 1999 WL 801544, at *1 (6th Cir. Sept. 28, 1999) ("Conclusory allegations of discrimination are insufficient to state a Title VII claim.").

But even assuming Plaintiff has made a *prima facie* case for discrimination on the basis of his race or sex, Defendant has offered a "legitimate non-discriminatory reason" for terminating his employment. *St. Mary's Honor Ctr.*, 509 U.S. at 506-07. Its policy provides that not showing up for work without providing advanced notice constitutes grounds for termination. That is exactly what happened. Plaintiff was scheduled for work on January 14th; he did not show, and he did not call. Plaintiff has not offered any evidence that would suggest Defendant's reason for his termination was a pretext for discrimination on the basis of his race or sex. Moreover, the Court has thoroughly reviewed the record and there is simply no support for an inference that

Defendant's stated reason for terminating Plaintiff (i.e., "no show, no call") was a mere pretext and Plaintiff was, instead, terminated because of his race or his sex. This claim fails.

### 2. Sexual Harassment

Because Plaintiff is proceeding *pro se*, the Court is liberally interpreting his complaint to include a claim for sexual harassment and will analyze it under a *quid pro quo* claim and hostile work environment claim. "To prevail on a *quid pro quo* claim of sexual harassment, a plaintiff must assert and prove (1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability." *Highlander v. K.F.C. Nat. Management Co.*, 805 F.2d 644, 648 (6th Cir. 1986). Similarly, "[i]n order to establish a hostile work environment claim, an employee must show the following: 1) the employee is a member of a protected class, 2) the employee was subject to unwelcomed sexual harassment, 3) the harassment was based on the employee's sex, 4) the harassment created a hostile work environment, and 5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior." *Bowman v. Shawnee State University*, 220 F.3d 456, 462-63 (6th Cir. 2000).

Here, Plaintiff states that Jason Ward, an employee of Defendant, "made contact on [Plaintiff] and following for 30 sec[onds]s to a minute long." [Doc. 1, pg. 5]. In his response, Plaintiff further asserts that Ward "touched [him] in a sexual way and sex was mention [sic]."

7

[Doc. 40, pg. 2]. However, these conclusory statements are contradicted by both Plaintiff's previous statements and the reports he attached to his complaint.

An internal report[3] of the incident, which Plaintiff attached to his complaint, notes that "Jason [Ward] came into the kitchen and walked up behind [Plaintiff] and put his hands on his shoulders, then [Ward] continued to follow him around and kept trying to talk to him. At this time, [Plaintiff] said he could smell alcohol on Jason [Ward]. This made him feel uncomfortable and this is the reason for his complaint…. Jason [Ward] does touch his shoulders and follows him for appx 30 sec[onds] to 1 min[ute]." [Doc. 1-1]. The police report states that Ward "put his hands on the complainant's shoulders and rubbed against him. The complainant asked him to stop and the on-duty manager Kim asked Jason [Ward] to leave which he eventually did." [Doc. 1-2, pg. 3]. Ward plead nolo contendere to assault in General Sessions Court of Hamblen County [Doc. 1-2, pg. 10].

Assuming the shoulder touch was based on sex, Plaintiff still cannot prevail because he cannot show that the "unwelcomed advances was an express or implied condition for receiving job benefits or that [his] refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment…." *Highlander*, 805 F.2d at 648. In other words, he can show no *quid pro quo*. Without that, his claim must be dismissed.

He also cannot show a hostile work environment. Plaintiff does not allege that this incident, in which an off-duty male co-worker touched his shoulder, was more than an isolated incident. It did not change the conditions of his employment. *See Hudson v. City of Highland Park*, 943 F.3d 792, 803 (6th Cir. 2019) (explaining that "'offhand comments and isolated

---

[3] This report is signed by Plaintiff and Jason Ward, as well as another individual who took the report. However, it is unclear who the third-party employee was.

8

incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment")(citations omitted). Plaintiff also alleged that Defendant investigated the incident and it never happened again. In other words, Defendant took reasonable care to prevent and correct any sexually harassing behavior, if any existed. *Bowman*, 220 F.3d at 463. Finally, the Court finds that the one isolated incident cited by Plaintiff, while no doubt offensive to Plaintiff, was not severe enough to create an objectively hostile work environment. Thus, his claim fails.

### 3. Retaliation Claim

As with discrimination claims, a plaintiff may rely on either direct or circumstantial evidence to establish that an employer engaged in retaliation. *Daniels v. Pike Cty. Comm'rs*, 706 F. App'x 281, 291 (6th Cir. 2017). Here, Plaintiff has not offered any direct evidence in support of his retaliation claim. Consequently, the *McDonnell Douglas* burden-shifting framework applies. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

For a retaliation claim under Title VII, "plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)).

For purposes of this analysis, the Court will assume that Plaintiff has made out a *prima facie* case for retaliatory discharge. Turning to the burden-shifting framework of *McDonnell Douglas*, the issue is whether Defendant has demonstrated a legitimate, nondiscriminatory reason

for terminating Plaintiff. It has. Plaintiff did not show up for work, and he did not call. That is a legitimate, nondiscriminatory reason for terminating his employment.

Ms. Jeanne Shampine, the General Manager for Defendant's Morristown restaurant, stated that "[her] decision to fire [Plaintiff] had nothing to do with the Jason Ward incident, his race or his alleged disability." [Doc. 37, pg. 4]. Defendant's policy provides that failure to report for an assigned shift without proper notice is "considered so serious that [it] can result in termination of employment for a single offense." [Doc. 37, pgs. 4, 7]. Ms. Shampine noted the corporate policy is necessary so they will "know if we have enough employees to operate the restaurant." [Doc. 37, pg. 4]. The Separation Notice Plaintiff attached to his complaint also provided that his separation was "No call no show for shift." [Doc. 1-4]. Ms. Shampine noted that she was not aware that Plaintiff "had initiated a prosecution against Jason Ward when the decision was made to terminate" him [Doc. 37, pg. 5].

Plaintiff claimed that his text messages between himself and his supervisor, Mr. Bryan Forsythe, proves his case. They do not. On January 13, 2018, Plaintiff texted Forsythe that he was at the emergency room and that he had to leave work early that day. He texted he would bring a doctor's excuse when he returned to work. However, Plaintiff failed to mention that he was not coming in the next day, and Forsythe would have no reason to believe so. After all, Plaintiff only thought he might have a pulled muscle. Rather than coming to work or advising Defendant he could not come in, he simply did not show up. Instead, he returned to work on January 15th with a doctor's note excusing him for two days. At this point, Ms. Shampine and Mr. Forsythe informed Plaintiff that not showing up for work and not calling in advance were grounds for termination, and they fired him.

Plaintiff never informed his supervisors that he was unable to make his shift on January

10

14. In fact, he does not dispute the issue. Instead, he argues that the reason Defendant gave for terminating him was pretextual. But he does so without any support. Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff.

**C.     Plaintiff's claim under the American's with Disabilities Act**

The ADA prohibits discrimination in employment against qualified individuals with a disability. 42 U.S.C. § 12112(a). "In order to establish a *prima facie* case of disability discrimination in the employment context, a plaintiff must allege and prove (1) that he is an individual with a disability; (2) that he is otherwise qualified for the position he seeks or holds; and (3) that he was excluded from the position under circumstances that raise a reasonable inference of unlawful discrimination." *Bradshaw v. Goodyear Tire and Rubber Co.*, 485 F.Supp.2d 821, 826 (N.D. Ohio 2007) (citing *Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437, 441 (6th Cir. 1991)). Here, there is no indication that Plaintiff was terminated because of any alleged disability. Plaintiff has not shown that any disability prevented him from calling in. He certainly knew how to communicate with his employer as he texted back and forth with his supervisor. He just did not tell him that he was not going to show up the next day he was scheduled to work. Therefore, Plaintiff's claim under the ADA must fail.

**IV.     Conclusion**

Based on the foregoing, the Court finds that based on the record as a whole, Plaintiff has failed to show as a matter of law that Defendant violated 42 U.S.C. 1983, Title VII, or the ADA. Therefore, Defendant's Motion for Summary Judgment [Doc. 37] is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE.** Defendant's motion to dismiss [Doc. 37] is **DENIED** as moot. Defendant's Motion for Extension of Time to Complete Discovery [Doc. 56] is **DENIED** as moot.

Further, because Exhibit 2 to Plaintiff's complaint [Doc. 1-2] contains Plaintiff's personal identifying information, the Clerk is **DIRECTED** to seal that Exhibit. A separate order dismissing this case shall enter.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge

12

Case 2:18-cv-00090-DCLC-CRW   Document 58   Filed 04/20/20   Page 12 of 12   PageID #: 480